**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **CRAIG R. ESPIGH,** | : | |
| | : | |
| **Petitioner** | : | **CIVIL ACTION NO. 1:06-CV-2436** |
| | : | |
| **v.** | : | **(Chief Judge Kane)** |
| | : | |
| **UNITED STATES OF AMERICA,** | : | |
| **CAMERON LINDSAY, Warden of** | : | |
| **USP-Canaan, <u>et</u> <u>al.</u>,** | : | |
| | : | |
| **Respondents** | : | |

**<u>MEMORANDUM</u>**

Before the Court is Petitioner Craig R. Espigh's motion for writ of habeas corpus

pursuant to 28 U.S.C. § 2241.  (Doc. No. 1.)  Also before the Court is a "motion to amend" filed

by Espigh.  (Doc. No. 9.)  The Government has opposed both motions, which are now ripe for

disposition.  For the reasons discussed below, both motions will be denied.

**I.      BACKGROUND**

On September 2, 2003, Espigh was sentenced to a 41-month term of imprisonment with a

three-year term of supervised release for bank robbery in violation of 18 U.S.C. § 2113(A) and a

60-month term of imprisonment with a five-year term of supervised release for possessing a

firearm during and in relation to a crime of violence in violation of 18 U.S.C. § 924(c).  (Doc.

No. 10, at 1-2.)  Espigh is currently serving his sentence at a satellite camp of USP-Canaan in

Waymart, Pennsylvania.  (Doc. No. 10, at 1.)  His sentence is to run for a consecutive 101-month

period, and assuming Espigh receives all remaining good time credit (GTC) as calculated by the

prison, he is scheduled to be released from prison on November 18, 2009.  (Doc. No. 10, at 2.)

## II.    ESPIGH'S § 2241 PETITION  (Doc. No. 1)

In his § 2241 petition, Espigh contends that the Bureau of Prisons ("BOP") has incorrectly calculated his GTC, depriving him of fifty GTC days to which he would be entitled, assuming he is not subject to disciplinary sanctions.  (Doc. No. 1, ¶ 3.)  In relevant part, 18 U.S.C. § 8624(b) provides for the awarding of GTC as follows:

> [A] prisoner who is serving a term of imprisonment of more than one year may receive credit towards the service of the prisoner's sentence, beyond the time served, of up to 54 days at the end of each year of the prison's term of imprisonment, beginning at the end of the first year of the term, subject to determination by the Bureau of Prisons that, during that year, the prisoner has displayed exemplary compliance with institutional disciplinary regulations . . . credit for the last year or portion of a year of the term of imprisonment shall be prorated and credited within the last six weeks of the sentence.

18 U.S.C. § 3624(b).  According to the BOP's interpretation of 18 U.S.C. § 3624(b), Espigh is eligible for a total of 404 days of GTC.  (Doc. No. 10, at 3, 5.)  To calculate this number, the BOP awarded 54 days of GTC for each of the first 7 full years of incarceration Espigh would serve; thus, for the period from May 23, 2002, through May 22, 2009, Espigh would receive 378 GTC days.  (Doc. No. 10, at 3.)  From May 23, 2009 through his GTC release date of November 18, 2009, Espigh was allotted a prorated 26 days of GTC, which amounts to a maximum of 404 GTC days on his 101 month sentence.[1]  (Id.)  By computing Espigh's GTC in this manner, the BOP interpreted the phrase "term of imprisonment" to mean time actually served.  See 18 U.S.C. § 8624(b); see also O'Donald v. Johns, 402 F.3d 172 (3d Cir. 2005).

Espigh argues that the BOP erred by calculating his GTC based upon the amount of time

---

[1]  Because of disciplinary sanctions, this number was reduced by 67 days, making 337 days the maximum amount of GTC Espigh can now receive, assuming no additional GTC days are disallowed.  (Doc. No. 10, at 3.)

he will actually serve, rather than upon the overall amount of the sentence.  As Espigh reads "term of imprisonment" in 18 U.S.C. § 3624(b), the calculation of his GCT should be based upon the entire period for which he was sentenced, approximately 8.4 years, multiplied by 54 GTC days per year.  (Doc. No.1, ¶ 8.)  Computing Espigh's GTC in this manner would result in a maximum of 454 GTC days.  (Id.)  In support of his method of computation, Espigh explains that Congress intended a prisoner to serve approximately 85% of his sentence, and he argues that the inaccurate computation of his GTC will result in his serving 87.5% of his sentence.  (Doc. No. 1, ¶¶ 7-8.)

Espigh's § 2241 challenge to the manner in which the BOP calculated his GTC fails as a matter of law because the Third Circuit has explicitly rejected Espigh's contention that the admittedly ambiguous language of 18 U.S.C. § 3626 requires GTC to be calculated based upon a prisoner's entire sentence, as opposed to on the time actually served by the prisoner.  O'Donald, 402 F.3d at 172-74.  In O'Donald v. Johns, Petitioner O'Donald, a prisoner incarcerated at the Federal Correctional Institute in Loretto, Pennsylvania, made the same argument that Espigh now advances.  Id. at 173 ("O'Donald asserts that § 3624(b) allows him to earn up to 54 days per year of the term of sentence imposed, not 54 days per year of time actually served as the BOP's calculation provides.").  In evaluating this argument, the court reasoned that "calculat[ing] GCT based on the sentence imposed would allow an inmate to earn GCT for time he was not actually incarcerated," an "unseemly result [that] would frustrate the process."  Id.  However, the Court also acknowledged that the statute was not drafted with precision such that it unquestionably supported the BOP's interpretation.  Accordingly, the Third Circuit found the GTC provision to be ambiguous since the phrase "term of imprisonment" as used in § 3626(b) could refer either "to

3

the sentence imposed or [to the] time served." Id. at 174.

After determining that the BOP's interpretation of the ambiguous provision was reasonable, the court deferred to their policy of calculating GTC based on the time served.  Id. at 174 (citing Chevron U.S.A., Inc. v. Natural Res. Def. Council, 467 U.S. 837 (1984); Stiver v. Meko, 130 F.3d 574 (3d Cir. 1997)).  The Third Circuit also noted that the First, Seventh, and Ninth Circuits have all reached this conclusion, finding the BOP's interpretation to be reasonable and affording it deference.  Id. (citing Perez-Olivo v. Chavez, 394 F.35 45 (1st Cir. 2005); White v. Scibana, 390 F.3d 997 (7th Cir. 2004); Pacheco-Camacho v. Hood, 272 F.3d 1266 (9th Cir. 2001)).

Because the Third Circuit has squarely addressed – and rejected – the argument advanced by Espigh, the Court will deny his § 2241 petition.

## III.    ESPIGH'S MOTION TO AMEND (Doc. No. 9)

In January 2007, Plaintiff sought leave to amend his § 2241 petition to include an allegation that his sentence is unconstitutional and therefore void.  (Doc. No. 9, ¶ 4.)  Espigh contends that the sentencing judge violated his Sixth Amendment rights by treating the federal sentencing guidelines as mandatory, rather than advisory.  See United States v. Booker, 543 U.S. 220 (2005).  In support of this argument, Espigh submits page 19 of his sentencing hearing transcript, wherein the judge is quoted as saying: "Mr. Espigh, there really isn't much that I can do other than what appears in the guidelines."  (Doc. No. 9, ¶ 5, Ex. A.)

In response, the Government explains that § 2241 is not the appropriate mechanism for Espigh to mount a challenge to the constitutionality of his sentence; rather, the Government explains that the exclusive remedy for a federal prisoner to challenge his conviction or sentence

is 22 U.S.C. § 2255.  (Doc. No. 12, 2-3) (citing authority).   The Government urges the Court to

deny Espigh's motion to amend because he advanced no reason why § 2255 is an inadequate or

ineffective avenue to test the legality of his detention.   (Id. at 4); see 28 U.S.C. § 2255; Davis v.

United States, 417 U.S. 333, 343-44 (1974); see also Coady v. Vaughn, 251 F.3d 480, 484 (3d

Cir. 2001) (holding that a state petition must challenge his conviction under 28 U.S.C. § 2254,

rather than § 2241, because "the more specific statute takes precedence over the more general

one," particularly when using the more general statute "would undermine limitations created by a

more specific provision.").

      The Court is mindful that Espigh is proceeding pro se and may indeed lack "skill and

training in the nuances of the Federal substantive and procedural law," (Doc. No. 13, at 1);

nevertheless, the Court must deny his motion to amend.  The Court agrees with the Government

that § 2255 is the appropriate vehicle to challenge the constitutionality of a sentence or

conviction, and that Espigh has not demonstrated that § 2255 is "inadequate or ineffective" to

test the legality of his detention.  Espigh's motion bases his request on his deires "to preserve the

judicial economy and the resources of the parties, and the Court."  (See Doc. No. 9, at 2.)

      As Espigh notes in his traverse, the time during which a prisoner can file a § 2255

petition is limited.  (Doc. No. 13, at 2, 3.)  The Anti-Terrorism and Effective Death Penalty Act

of 1996 ("AEDPA") amended § 2255 to provide, in pertinent part: "A 1-year period of limitation

shall apply to a motion under this section.  The limitation period shall run from the latest of . . .

the date on which the judgment of conviction becomes final."  28 U.S.C. § 2255[2]; see also Kapral

---

      [2]  The three other triggering mechanisms for the one-year limitations period are not
applicable to the § 2255 claims Espigh seeks to advance by amending his § 2241 petition.

v. United States, 166 F.3d 565, 567 (3d Cir. 1999) (noting that the provision effectively creates a one-year statute of limitations to bring a collateral attack under § 2255).

Plaintiff's sentence and conviction became final in September 2003, when the ten-day period to appeal his September 2, 2003, sentence expired.  See Fed. R. App. P. 4(b)(1).  Thus, he had until mid-September 2004 to file a timely § 2255 petition.  While Espigh concedes that many years have elapsed since his 2003 conviction and sentence became final, he contends that he "seeks leave of this Court by the only vehicle presently available to him" to advance his arguments Sixth Amendment arguments in the wake of United States v. Booker, 543 U.S. 220 (2005).  Petitioner's reliance on Booker is misplaced: "Booker does not apply retroactively to initial motions under § 2255 where the judgment was final as of January 12, 2005, the date Booker issued."  Lloyd v. United States, 407 F.3d 608, 616 (3d Cir. 2005).

Accordingly, the Court finds that Espigh cannot amend his § 2241 petition to challenge the constitutionality of his conviction and sentence because, subject to very few exceptions not applicable here, § 2255 is the exclusive method for making such collateral attacks.  Moreover, the claims Espigh now seeks to advance would, in any event, be time-barred and unsupportable as a matter of law.  Accordingly, the Court will deny Espigh's "motion to amend."

An appropriate order follows.

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **CRAIG R. ESPIGH,** | : | |
| | : | |
| **Petitioner** | : | **CIVIL ACTION NO. 1:06-CV-2436** |
| | : | |
| **v.** | : | **(Chief Judge Kane)** |
| | : | |
| **UNITED STATES OF AMERICA,** | : | |
| **CAMERON LINDSAY, Warden of** | : | |
| **USP-Canaan, et al.,** | : | |
| | : | |
| **Respondents** | : | |

## <u>ORDER</u>

    **AND NOW**, this 29th  day of June, 2007, upon consideration of Petitioner Espigh's

motions for a writ of habeas corpus under 28 U.S.C. § 2241 (Doc. No. 1) and to amend his §

2241 petition (Doc. No.9), and for the reasons set forth in the accompanying memorandum, **IT**

**IS HEREBY ORDERED THAT** the motions are **DENIED**.  The Clerk of Court is directed to

close the case file.


                                                 _S/ Yvette Kane_____
                                                 Yvette Kane, Chief Judge
                                                 United States District Court
                                                 Middle District of Pennsylvania